On the Merits.
Spencer, J.
Mrs. Oazabat purchased in July, 1868, certain lots in New Orleans, and gave for part of the price her promissory notes, secured by mortgage and vendor’s lien. These notes came into the possession of Jacob. This mortgage was duly recorded in 1868. In February, 1872, Mrs. Oazabat sold this property to R. L. Preston for part cash and part on time, payable at certain dates, “-provided, however, that all the taxes, privileges, liens, and mortgages now standing against said property are erased and canceled from the records of the mortgage office, otherwise the payment of said sum of $8000 is extended until the full release and cancellation of said encumbrances and mortgages.”
In June, 1876, Jacob, as holder of Mrs. .Oazabat’s notes for the price, seized and sold the property,, and bought it. The city of New Orleans claims by third opposition the taxes of 1869,1870, and 1871 — all subsequent taxes being paid.
There was no registry of the delinquent city taxes of 1869, 1870', and 1871, in the mortgage office, until 1873, when the registry thereof was effected under and in accordance with the provisions of act No. 73 of 1872, relative to city taxes, approved April —, section 11 of which provides :
“ That all taxes due and unsettled' at the passage of this act, or hereafter becoming due, are hereby declared to be a lien and privilege upon the property assessed for the same, to have priority over all other liens and privileges.”
“ And against all other properties of the delinquent, they shall have the force and effect of a lien from the date of their being recorded in the mortgage office.”
*517 The city contends—
First — That no registry is or ever was necessary in order to preserve tax liens.
Second — That if article 128 of the constitution be held applicable to tax liens, that it was inoperative as to city taxes, until put into operation by legislative act, which was not done until said act seventy-three of 1872.
Third — That the provisions of the constitution and Code, relative to registry, can only be invoked by third persons, and that neither plaintiff nor any other citizen is or can be a third person within the meaning of the law, quoad taxes.
Per contra, the plaintiff invokes art. 123 of the constitution, act No. 95 of 1869, and articles 3273 and 3274 of the R. O. 0., as well as act 42 of 1871, sec. 67.
We have read with interest the very able and ingenious argument of the Assistant City Attorney upon the nature and character of taxation ; and if we were permitted to consider the matter from a purely theoretical and philosophic standpoint, would be greatly inclined to adopt his views. But we think that the positive and plain provisions of our law do not admit of our resorting to theory and philosophy for the solution of the questions at issue. Since the adoption of the constitution of 1868 our legislation has all proceeded upon the idea, that registry was necessary to the prosecution of tax liens, and all the revenue laws of the State have provided for recording the delinquent rolls in the mortgage office. This court has frequently recognized the application of the registry laws to tax liens, and that can hardly be considered now an open question. 28 A. 496 ; 26 A. 592 ; 22 A. 278 ; 23 A. 270, 694, 695 ; 24 A. 25 ; 25 A. 232 ; 26 A. 80, 350, 351. If no one can be considered a third person, quoad a tax lien, as contended for by the city, then all this legislation touching the registry of such lien is meaningless and idle. If registry is only necessary in order to affect third persons (to which we all agree), and if there can be no third person, it would be foolish to provide for the protection of such an impossible class. We are not disposed to view the legislation in that light; and we hold that tax liens, which should have been recorded, but which were not recorded at the time a third person acquires rights to or upon the property, can not be enforced to his prejudice. Wo hold that, in such case, as to such third person, there is no lien, no privilege, for the taxes. The constitution, art. 123, expressly declares that “no privilege shall affect third persons, unless recorded.” The R. C. C., articles 3273, 3274, and 3347, are to same effect. These laws are mandatory and prohibitory. If it be true that until act 73 of 1872 no special mode of effecting a registry was provided for the city of New Orleans, does that fact *518 enable us to disregard these prohibitions ? These were general laws, found in the revenue acts of the State providing modes of registering tax liens, and in the absence of special regulations, the city should have pursued them.
The question oí priority of registry can never arise between a privilege and a mortgage. If a privilege exists, it is, in its nature, higher than a mortgage, and must of necessity be paid before and in preference to it. C. C. 3186, 3187.
The only question that a mortgage creditor can raise is as to the existence of the privilege, since if it exists it primes his mortgage, being higher in its nature. Now our laws regard non-recorded privileges as non-existent, so far as concerns third persons. Hence no privilege for delinquent taxes, unrecorded when plaintiff’s mortgage took effect, exists as to him, so no such privilege, unrecorded at the dale Preston bought the property (in February, 1872), can be enforced against it in his hands. That was what this court decided in New Orleans Savings Institution vs. Leslie, 28 A. 496. The question there was, whether city taxes of 1868 and.1869, not recorded until 1873, could affect a mortgage given in 1871. The court properly held them without effect.
We must not be understood as holding that privileges, accruing from taxes levied subsequent to the registry of a mortgage, and which have been recorded before the rights of other persons have attached, can be subordinated to, or primed by, such mortgage. The fact that the registry of the mortgage antedates that of the privilege, is matter of no moment. If the privilege exists, and has been preserved by registry, it, by its nature, takes rank above a mortgage. The rule of the Code requiring the recording of contracts creating privileges, to be made on the day of the making of the contract, can not, in the nature of things, be applied to tax liens ; for they do not arise from contracts, but from facts and circumstances wholly independent of the will of the party. A registry of the delinquent roll, at any time, will preserve the privilege as against persons acquiring their rights prior to the imposition of the delinquent tax. But in this case R. L. Preston purchased this property and acquired his rights thereto subsequent to the imposition of the taxes sought to be enforced, and subsequent to the date when the delinquency should have been recorded. By the terms of his act of purchase, he acquired with reference to the existing recorded liens, privileges and mortgages. Where these two facts concur, to wit, where the right is acquired after the tax is imposed, and after the delinquency thereof should have been recorded, that right will not be affected by any subsequent registry. That would be giving to laws a retroactive effect, and divesting vested rights, in contravention of the constitution. This disposes of act 73 of 1872, which was passed after Preston purchased. It can not *519 resuscitate and revive privileges that were inoperative when he purchased.
We see therefore that the city can not enforce these taxes against the property in the hands of Preston. As against the property in his hands it has no privilege, and the court below properly rejected its demands. The judgment appealed from is affirmed with costs.